UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------------X

CLIFTON BRADLEY,

                                   Plaintiff,                    Index No.: 16-cv-07043 (RA)


           -against -


THE NEW YORK CITY DEPARTMENT OF EDUCATION,
and DAVID FANNING,
Individually and in his Official Capacity,

                                   Defendants.

-----------------------------------------------------------------------------X


---

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

---


JONATHAN A. TAND & ASSOCIATES, P.C.
990 Stewart Avenue, Suite 225
Garden City. New York 11530
(516) 393-9151

*Attorneys for Plaintiff*


Hope Senzer Gabor,
Of Counsel

# TABLE OF CONTENTS

Page

Table of Authorities ………………………………………………………..…….. ii

Preliminary Statement ………………………………………………………………1

Statement of Facts ………………………………………………………………...2

Argument ……………………………………………………………………… 5

I.    Standard of Review ……………………………………………………………5

II.    Plaintiff Has Established a Viable Claim of Retaliation Under the FMLA ……………... 7

    A.    Plaintiff Suffered Adverse Employment Actions …………………………… 8

    B.    A Causal Connection Exists to Raise an Inference of Retaliatory Intent ………… 10

III.    Plaintiff Has Established Viable Claims Under 42 U.S.C. § 1983 ………………….... 12

    A.    Plaintiff Has Pled Viable Claims of Retaliation in Violation of the First Amendment of the U.S. Constitution and the New York State Constitution ……………………………………………….. 12

    B.    Plaintiff Has Pled a Viable Claim for the Violation of his Equal Protection Rights ………………………………………………….…... 14

    C.    Plaintiff Has Sufficiently Pled Municipal Liability Against Defendants Under 42 U.S.C. § 1983 through *Monell* ……………………………………….. 16

IV.    Plaintiff Has Established Viable Claims Under the NYSHRL and NYCHRL ………… 19

    A.    Plaintiff Has Pled a Viable Claim of Age Discrimination ………………………. 19

    B.    Plaintiff Has Pled a Viable Claim for Retaliation Under the NYSHRL and NYCHRL …………………………………………………… 20

    C.    Plaintiff Has Pled a Claim for a Hostile Work Environment ………..…………… 22

Conclusion ……………………………………………………………………… 24

# TABLE OF AUTHORITIES

**Case**                                                                      **Page**

*Ashcroft v. Iqbal,* 129 S. Ct. 1937 (2009) ............................................................... 5, 6

*Augustin v. Enlarged City Sch. Dist. of Newburgh,* 616 F.Supp.2d 422 (S.D.N.Y. 2009) ......... 16

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007) ........................................................ 5

*Benimovich v. Fieldston Operating LLC,* 2013 U.S. Dist. LEXIS 40418 (S.D.N.Y. 2013) ......... 7

*Bermudez v. City of N.Y.,* 783 F Supp. 2d 560 (S.D.N.Y. 2011) ........................................ 21

*Brass v. American Film Technologies, Inc.,* 987 F. Supp 142 (2d Cir. 1993) ......................... 6

Carr v. WestLB Admin., Inc., 171 F. Supp. 2d 302 (S.D.N.Y. 2001) .................................. 11

*Carter v. Incorporated Vill. of Ocean Beach,* 693 F. Supp. 2d 203 (E.D.N.Y 2010) ............... 12

*Cassidy v. Scoppetta,* 365 F. Supp.2d 283 (E.D.N.Y. 2005) ........................................... 15

*Cine SK8, Inc. v. Town of Henrietta,* 507 F.3d 778 (2d Cir. 2007) .................................... 15

*City of Cleburne v. Cleburne Living Ctr., Inc.,* 473 U.S. 432,
105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985) ........................................................ 14

*Collins v. N.Y. City Transit Auth.,* 305 F.3d 113 (2d Cir. 2002) ....................................... 12

*Conley v. Gibson,* 355 U.S. 41 (1957) ................................................................... 5

*Davis v. New York City Dep't of Educ.,* 804 F.3d 231 (2d Cir. 2015) ................................. 8

*Donnelly v. Greenburgh Cent. Sch. Dist. No. 7,* 691 F3d 134 (2d Cir. 2012) ........................ 7

*Douyon v. N.Y. City Dep't of Educ.,* 2016 U.S. App. LEXIS 20004
(2d Cir Nov. 7, 2016, No. 15-3932) ............................................................... 7

*Dun & Bradstreet, Inc.v. Greenmoss Builders, Inc.,* 472 U. S. 749 (1985) .......................... 13

*Eldridge v. Rochester City Sch. Dist.,* 968 F. Supp. 2d 546 (W.D.N.Y. 2013) ...................... 18

*Farrugia v. N. Shore Univ. Hosp.,* 13 Misc. 3d 740, N.Y.S.2d 718, (N.Y. Sup.Ct. 2006) ......... 22

*Ferraro v. Kellwood Co.,* 440 F.3d 96 (2d Cir. 2006) .................................................. 19

# TABLE OF AUTHORITIES, cont'd

**Case**                                                              **Page**

*Forrest v. Jewish Guild for Blind*, 3 N.Y.3d 295,
  819 N.E.2d 998, 786 N.Y.S.2d 382, (N.Y. 2004) ............................................... 22

*Galabya v NY City Bd. of Educ.*, 202 F3d 636 (2d Cir. 2000) ........................................ 8

*Garcetti v. Ceballs,* 547 U. S. 410, 418. (2006) ........................................................ 12

*Gorokhovsky v. N.Y.C. Hous. Auth.*, 552 F. App'x 100 (2d Cir. 2014) ............................... 20

*Grant v. Bethlehem Steel Corp.*, 622 F.2d 43 (2d Cir. 1980) ........................................... 11

*Hanna v. New York Hotel Trades Council.* 18 Misc. 3d 436, 851 N.Y.S.2d 818
  (N.Y. Cnty. Sup. Ct. 2007) ............................................................................. 20

*Hollander v. American Cyanamid Co..* 895 F.2d 80 (2d Cir. 1990) ................................... 11

*Hurdle v. Bd. of Educ. of the City of N. Y.*, 113 Fed. Appx. 423 (2nd Cir., 2004) .................. 17

*Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989) ........... 17

*Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10 (2d Cir. 2013) ...... 21

*Kelly v. Huntington Union Free School Dist.*, 2012 U.S. Dist. LEXIS 45725
  (E.D.N.Y. Mar. 30, 2012, No. 09-CV-2101 (JFB) (ETB) ..................................... 10

*Kramer v Time Warner, Inc.*, 937 F2d 767 (2d Cir. 1991) ............................................. 6

*Lawrence v. Mehlman*, 389 F. App'x 54, 56 (2d Cir. 2010) ........................................... 9

*Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268 (2d Cir. 2009) ................................... 20

*Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons*, 842 F.2d 590 (2d Cir. 1988) ... 12

*Marino v. Chester Union Free Sch. Dist.*, 859 F. Supp. 2d 566 (S.D.N.Y. 2012) ................... 18

*Mattison v. Black Point Beach Club Ass'n,* 376 Fed. Appx. 92 (2d Cir. 2010) ..................... 15

*McDonnell Douglas Corp v. Green,* 411 U.S. 792. 93 S. Ct. 1817. 36 L. Ed. 2d 668 (1973) ...... 7

*McFarlane v. Chao*, 2007 US Dist LEXIS 99188 (S.D.N.Y. Mar. 13, 2007) ....................... 10

*McNamara v. Kaye*, 2008 WL 3836024 (E.D.N.Y. Aug. 13, 2008) ................................... 6

# TABLE OF AUTHORITIES, cont'd

**Case**                                                                                                                    **Page**

*Morrison v. Johnson*, 429 F.3d 48 (2d Cir. 2005) ....................................................... 12

*Papasan v. Allain,* 478 U.S. 265 (1986) .................................................................... 5

*Patterson v. County of Oneida*, 375 F.3d 206 (2d Cir. 2004) ............................................ 16

*Pembaur v. City of Cincinatti*, 475 U.S. 469 (1986) ..................................................... 17

*Potenza v. City of New York*, 365 F.3d 165 (2d Cir. 2004) .............................................. 7

*Quinn v. Green Tree Credit Corp.*, 159 F.3d 759 (2d Cir. 1998) ...................................... 10

*Rabideau v. Beekmantown Cent. Sch. Dist.*, 89 F. Supp. 2d 263 (N.D.N.Y. 2000) ................. 18

*Richardson v. New York State Dep't of Correctional Serv.*, 180 F.3d 426 (2d Cir. 1999) ....... 8, 10

*Ruotolo v. City of New York,* 514 F.3d 184 (2d Cir. 2008) .............................................. 6

*Sanjuan v. American Bd. of Psychiatry and Neurology, Inc.,* 40 F.3d 247 (7th Cir. 1994) ......... 6

*Siddiqi v. New York City Health & Hospitals Corp.*, 572 F. Supp. 2d 353 (S.D.N.Y. 2008) ....... 9

*Snyder v. Phelps*, 131 S. Ct. 1207 (2011) ................................................................. 13

*Spiegel v. Schulmann*, 604 F.3d 72 (2d Cir. 2010) ...................................................... 19

*Szewczyk v. City of N.Y.*, 2016 US Dist LEXIS 91856
(E.D.N.Y. July 14, 2016, No. 15-CV-918 (MKB)) ...................................................... 19

*Taylor v. NY City Dep't of Educ.*, 2012 US Dist LEXIS 170917
(E.D.N.Y. Nov. 30, 2012, No. 11-CV-3582) ............................................................ 9

*Tekula v. Bayport-Blue Point Sch. Dist.*, 295 F.Supp.2d 224 (E.D.N.Y. 2003) ..................... 16

*T.Z. v. City of New York*, 635 F. Supp. 2d 152 (E.D.N.Y. 2009) .................................... 18

*Weber v City of N.Y*, 973 F Supp 2d 227 (E.D.N.Y. 2013) ............................................ 9

*Weeks v. New York State (Div. of Parole)*, 273 F.3d 76 (2d Cir. 2001) ............................. 8

*Weimer v. City of Johnstown*, 249 A.D.2d 608, 670 N.Y.S.2d 624 (3rd Dept., 1998) ............. 17

## TABLE OF AUTHORITIES, cont'd

**Case**                                                                 **Page**

*Williams v. N.Y. City Housing Auth.*, 335 Fed. Appx. 108,
    2009 WL 1774271(2d Cir. June 24, 2009) ................................................... 21, 23

**Authority**

29 U.S.C. § 2612(a)(1)(C) ......................................................................... 7

Fed. R. Civ. P. 8(a)(2) ............................................................................. 5

Fed. R. Civ. P. 12(b)(6) ........................................................................... 5

Fed. R. Evid. 201 ................................................................................... 6

## PRELIMINARY STATEMENT

Clifton Bradley (hereinafter referred to as "Plaintiff") is a 64-year old African-American male. After a successful twenty-three (23) year corporate career, Plaintiff began a new career as an educator. Since this transition eleven (11) years ago, Plaintiff has served as a special education teacher at A. Philip Randolph Campus High School (hereinafter referred to as the "School"), part of Defendant New York City Department of Education (hereinafter "DOE"). In the first ten (10) years of his career with Defendant DOE, Plaintiff was always rated "satisfactory" by his various supervisors.

However, occurring in the same period in which Plaintiff began to undertake activities protected by law and directed at the safety and welfare of others, including his own elderly mother and the population of the School, Defendant David Fanning (hereinafter referred to as "Fanning"), the Principal of the School, began to target Plaintiff with unwarranted and unjustified accusations. The blatant retaliation and discrimination of Plaintiff culminated in termination proceedings being levied against him.

As set forth herein and the attendant Declaration of the undersigned counsel, Plaintiff's Complaint, filed on or about September 12, 2016, contains facially plausible claims upon which relief can be granted under the theories of liability cited therein.[1] Accordingly, Plaintiff respectfully asks this Court to dismiss Defendants' instant motion in its entirety and sustain Plaintiff's claims brought pursuant to 42 U.S.C. §1983; the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*; the New York State Human Rights Law, Executive Law Section § 290 *et seq.* ("NYSHRL"); the New York City Human Rights Law ("NYCHRL").

---

[1] Citation to the Complaint (ECF Docket No. 5, Verified Complaint dated August 26, 2016) are denoted by the abbreviation "Compl.", followed by the relevant paragraph number. Citations to Declaration in Support of Hope Senzer Gabor, Esq., are denoted by "Gabor Decl." followed by the relevant exhibit designation and, when necessary, page and line number.

## STATEMENT OF FACTS

In 2003, Plaintiff commenced his employment as a special education teacher at Defendant DOE's A. Philip Randolph Campus High School (hereinafter referred to as the "School"). *See* Compl. at ¶ 10. For the first ten (10) years of Plaintiff's career with the DOE, he was rated "Satisfactory" by his various supervisors. *Id.* at ¶ 11. Plaintiff also received Satisfactory ratings from Defendant Fanning for the 2011-2012 and 2012-2013 school years, which were the first two years of Fanning's tenure at the School. *See* Gabor Decl. at Ex. A, transcript expert from *In the Matter of New York City Department of Education v. Clifton Bradley, Section 3020-a Education Law Proceeding* (hereinafter "3020-a Transcript"), at 654:7-23.

However, during the 2013-2014 school year, Plaintiff was required to request time off in order to take care of his elderly and ill mother. *See* Compl. at ¶ 15. Following Plaintiff's return from caring for his mother, Fanning began to call Plaintiff into meetings, at which Fanning and members of his administration would harass Plaintiff for his absences from the School. *Id.* at ¶ 18. Beginning at approximately this same timeframe, Fanning's conduct towards Plaintiff became openly rude and disrespectful. *Id.* at ¶¶ 23-24. By way of example, on multiple occasions Fanning screamed at and berated Plaintiff for innocent and benign acts, such as Plaintiff gathering supplies for his students. *Id.* at ¶ 41. This treatment was directed solely at Plaintiff, and his colleagues – all of whom are roughly thirty (30) years younger than Plaintiff, who was sixty-four (64) years old at the time of filing the instant action – have told Plaintiff that Fanning's discriminatory and retaliatory tenor towards him was unique to the faculty and staff of the School. *Id.* at ¶¶ 7, 26.

Moreover, following Fanning coming to the School as its Principal, he began to reduce the presence of security personnel. *Id.* at ¶ 27. On multiple occasions beginning in the 2013-2014

school year, Plaintiff voiced concern to the administration about the lack of security and the danger it posed to students and staff. *Id.* at ¶ 32; *see also* 3020-a Transcript at 662:9-665:11. Particularly, Plaintiff raised the issue of security to Assistant Principal Rhonda Pekow (hereinafter referred to as "Pekow"). *See* 3020-a Transcript at 664:9-665:11. Pekow was invited by Fanning and was hand-selected by him to be the head of security of the School. *Id.* at 216:5-217:9. Plaintiff expressed his concerns about security both before and after he was injured in November of 2013[2] while attempting to break up a fight in a hallway of the School between students that were not assigned to Plaintiff's classes. *Id.* at 657:18-658:24.

Beginning contemporaneously with Plaintiff taking FMLA leave and addressing the issues of security at the School to Fanning's administration, he began being subjected to a pattern of targeted harassment by said administration. *See generally* Compl. In addition to the continuous rebuke by Fanning, Plaintiff was put through a pattern of frivolous allegations and negative evaluations by the administration that began on October 9, 2013 and continued through June of 2015, when Plaintiff was brought up on charges pursuant to Education Law § 3020-a in an attempt to remove him from his tenured role as a teacher. *See id.* at ¶¶ 46-47; *see also* Gabor Decl. at Ex. B, Specification of Charges dated June 17, 2015 (hereinafter referred to as "Specification of Charges). As a result of these charges, Plaintiff was suspended with pay but was curtailed from continuing his second job with Defendant DOE at another school, where he taught evening classes to students that had failed the Regents exam. *See* Compl. at ¶ 48; *see also* 3020-a Transcript at 725:18-726:11.

---

[2] In the Complaint, the date of Plaintiff's injury was given as having occurred in November 2014. *See* Compl. at ¶ 30. However, during the testimony given at the 3020-a hearing on December 16, 2015, Plaintiff stated that the injury occurred on November 14, 2013. *See* 3020-a Transcript at 660:20-21.

During the hearing conducted in accordance with Education Law § 3020-a, testimony was given that evidences not only Fanning's "arrogant and disrespectful" attitude toward Plaintiff, but also the disparate treatment imposed on Plaintiff. *See* Gabor Decl. at Ex. C, Opinion and Award dated February 5, 2016 (hereinafter referred to as "Opinion and Award"), at pp. 10-12. By way of example, one charge levied against Plaintiff dealt with him having quickly left his classroom to retrieve supplies for his students in violation of Defendant's policy. *See* Specification of Charges at ¶¶ 2, 5; *see also* 3020-a Transcript at 362:21-23. However, Pekow testified that another teacher had been away for six (6) months on maternity but that Defendants failed to adhere to the policy themselves in adequately replacing her. *See* 3020-a Transcript at 363:22-365:10; *see also* Opinion and Award at pp. 10-11. Moreover, Plaintiff was charged with the failure to complete Individual Education Program ("IEP") plans. However, he was not the only teacher to turn in IEP plans late, but was the only teacher charged with not meeting the deadline and brought up on § 3020-a charges as a consequence. *See* Opinion and Award at p. 11.

After the Education Law § 3020-a charges were dismissed in their entirety by Hearing Officer Marc A. Winters on February 5, 2016, Fanning continued to harass and retaliate against Plaintiff. *See generally* Compl. at ¶¶ 50-58. By way of example, Fanning withheld Plaintiff's 2015-2016 performance review for several weeks, which prohibited Plaintiff from being eligible to transfer to another school. *Id.* at ¶¶ 54-58.

Plaintiff will also supplement additional facts throughout this memorandum as needed.

**ARGUMENT**

**I. Standard of Review**

Rule 8(a) provides that a pleading shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court clarified the pleading standard applicable in evaluating a motion to dismiss under Rule 12(b)(6). The Court in *Twombly* disavowed the statement in *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 550 U.S. at 562. Thus, to survive a motion to dismiss under *Twombly*, a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

While a complaint subject to a Fed. R. Civ. P. 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff must provide more than labels and conclusions. A formulaic recitation of the elements of a cause of action will not do. The plaintiff must allege enough facts to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true. *Twombly* at 555; *see also Papasan v. Allain*, 478 U.S. 265, 286 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation").

In *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), the Supreme Court provided further guidance and set forth a two-pronged approach for courts when deciding a motion to dismiss. First, a court should identify pleadings that are not entitled to the assumption of truth. *Id.* at 1950. "While legal conclusions can provide the framework of a complaint, they must be supported by factual assumptions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere

5

conclusory statements are not sufficient. *Id.* at 1949 (*citing Twombly*, 550 U.S. at 555). A complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face. *Ashcroft*, 1949 (2009). The factual allegations need not be detailed. *Sanjuan v. American Bd. of Psychiatry and Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994). Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all allegations in the complaint are true (even if doubtful in fact)." *Ashcroft* at 1965.

This does not, however, require heightened pleading standards. Rather, the Second Circuit has interpreted the above language to require a flexible plausibility standard, "which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible, rather than to mandate a 'universal standard of heightened fact pleading.'" *McNamara v. Kaye*, 2008 WL 3836024, *4 (E.D.N.Y. Aug. 13, 2008). A complaint may not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Brass v. American Film Technologies, Inc.*, 987 F.Supp 142 (2d Cir. 1993). Therefore, in deciding a motion to dismiss pursuant to Rule 12(b)(6), a court must assume the veracity of well-pleaded factual allegations, and draw all reasonable inferences in the plaintiff's favor. *Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008).

Moreover, in considering a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a district court must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits, incorporated in the complaint by reference, or it may consider matters of which judicial notice may be taken under Fed. R. Evid. 201. *Kramer v Time Warner, Inc.*, 937 F2d 767, 773 (2d Cir. 1991). As the material referenced in support of this memorandum can be accurately and readily determined from sources whose

accuracy cannot reasonably be questioned, Plaintiff respectfully requests that the Court take judicial notice of said material.

Accordingly, in the present case, when all inferences pled in the Complaint are drawn in Plaintiff's favor, it is clear that the burden has been satisfied. Accordingly, Defendants' instant motion should be dismissed in its entirety.

## II. Plaintiff Has Established a Viable Claim of Retaliation Under the FMLA

Under the FMLA, an eligible employee is entitled to twelve (12) weeks of unpaid leave to care for a family member – including a parent – who is suffering from a serious health condition. *See* 29 U.S.C. § 2612(a)(1)(C). The FMLA regulations state that:

> The Act's prohibition against "interference" prohibits an employer from discriminating or retaliating against an employee or prospective employee for having exercised or attempted to exercise FMLA rights. For example … employers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions.

29 C.F.R. § 825.220(c). Thus, the Second Circuit has recognized two theories of liability under the FMLA: interference and retaliation. *See, e.g., Benimovich v. Fieldston Operating LLC*, 2013 U.S. Dist. LEXIS 40418, at *10 (S.D.N.Y. 2013) (*citing Potenza v. City of New York*, 365 F.3d 165 (2d Cir. 2004)). Applying the familiar *McDonnell Douglas* burden-shifting analysis to FMLA retaliation claims, Plaintiffs *prima facie* retaliation case must show: "(1) he exercised rights protected under the FMLA; (2) he was qualified for his position; (3) he suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent." *See generally McDonnell Douglas Corp v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973); *see also Potenza*, 365 F.3d at 168; *Douyon v. N.Y. City Dep't of Educ.*, 2016 U.S. App. LEXIS 20004, at *4 (2d Cir Nov. 7, 2016, No. 15-3932); *Donnelly v. Greenburgh Cent. Sch. Dist. No. 7*, 691 F3d 134, 147 (2d Cir. 2012).

In the present case, Defendants do not contest that Plaintiff exercised his rights under the FMLA and that Plaintiff was qualified for his position, satisfying the first and second prongs of *McDonnell Douglass*. respectively. Rather, Defendants attempt to argue against the third and fourth prongs. Each will be discussed below.

## A. Plaintiff Suffered Adverse Employment Actions

A plaintiff sustains an adverse employment action if she endures a "materially adverse change" in the terms and conditions of employment. *See Richardson v. New York State Dep't of Correctional Serv.*, 180 F.3d 426, 446 (2d Cir. 1999) (relying on *Crady v. Liberty Nat'l Bank and Trust Co.*, 993 F.2d 132, 136 (7th Cir. 1993)); *see also Galabya v NY City Bd. of Educ.*, 202 F3d 636, 640 (2d Cir. 2000). To be "materially adverse", a change in working conditions must be "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Crady*, 993 F.2d at 136. A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." *Weeks v. New York State (Div. of Parole)*, 273 F.3d 76, 85 (2d Cir. 2001). There is no bright-line rule as to what constitutes a "materially adverse change," and courts must review the circumstances of each case to determine whether a challenged employment action is sufficiently significant to serve as a basis for a claim of discrimination. *Davis v. New York City Dep't of Educ.*, 804 F.3d 231, 235 (2d Cir. 2015) (*citing Richardson*, 180 F.3d at 446).

In the present case, Plaintiff has pled allegations and cited to corroborating material that raise the Complaint well above any level of speculation. Prior to 2013-2014 school year, Plaintiff had received nothing but stellar ratings, and even received "Satisfactory" ratings from Defendant Fanning in the two preceding years. *See* Compl. at ¶ 11; *see also* 3020-a Transcript at 654:7-23.

8

Then, following Plaintiff taking statutorily protected absences from the School beginning in the 2013-2014 school year, Fanning suddenly began a pattern of harassment that began in October 2013 and continued through the filing of the pleadings at bar. The adverse employment actions of targeted harassment, hostility, and disparate subjection of discipline was a common occurrence from Fanning and his administration from October 2013 through the imposition of Education Law § 3020-a charges against Plaintiff in June of 2015. *Id.* at ¶¶ 24, 40-47. As part of this retaliation, Plaintiff received negative evaluations premised upon frivolous charges on October 9, 2013; November 25, 2013; March 14, 2014; April 3, 2014; October 2, 2014; October 30, 2014; May 4, 2015; and May 8, 2015. Although negative performance evaluations or ratings may, "in some circumstances, constitute adverse employment action," *Lawrence v. Mehlman*, 389 F. App'x 54, 56 (2d Cir. 2010), they must trigger negative consequences to the conditions of employment to qualify as such. *See, e.g., Siddiqi v. New York City Health & Hospitals Corp.*, 572 F. Supp. 2d 353, 367 (S.D.N.Y. 2008) ("A negative employment evaluation, if accompanied by negative consequences, such as demotion, diminution of wages, or other tangible loss, may constitute an adverse employment action. However, negative evaluations, standing alone without any accompanying adverse results, are not cognizable.") (citations and internal quotation marks omitted); *see also Taylor v. NY City Dep't of Educ.*, 2012 US Dist LEXIS 170917, at *21 (E.D.N.Y. Nov. 30, 2012, No. 11-CV-3582).

Here, Fanning and his administration used the two (2) years of progressive negative evaluations and discipline for the negative and adverse consequence of the Education Law § 3020-a charges. And, the institution of a 3020-a proceeding is an adverse employment action. *Weber v City of N.Y*, 973 F Supp 2d 227, 268 (E.D.N.Y. 2013); *see also Kelly v. Huntington Union Free School Dist.*, 2012 U.S. Dist. LEXIS 45725, at *54-55 n.21 (E.D.N.Y.

Mar. 30, 2012, No. 09-CV-2101 (JFB) (ETB) ("[T]he 3020-a charges are clearly an adverse employment action because 'the institution of disciplinary proceedings is sufficient in this circuit to constitute an adverse employment decision.'" (*quoting Skehan v. Village of Mamaroneck*, 465 F.3d 96, 106 (2d Cir. 2006)). Interestingly, Defendants do not argue that the § 3020-a charges was not an adverse action. Further, while the § 3020-a process was pending, Plaintiff also suffered the adverse action of being unable to work his second job with Defendant DOE at another school and earn the concomitant income. *See* Compl. at ¶ 48; *see also* 3020-a Transcript at 725:18-726:11.

## B. A Causal Connection Exists to Raise an Inference of Retaliatory Intent

A plaintiff can establish the "causal connection needed for proof of a retaliation claim," by offering evidence from which a reasonable fact-finder could conclude "the protected activity was closely followed in time by the adverse action." *McFarlane v. Chao*, 2007 US Dist LEXIS 99188, at *67-68 (S.D.N.Y. Mar. 13, 2007) (*citing Cifra v. Gen. Elec. Co.*, 252 F.3d 205, 216 (2d Cir. 2001)). However, a court must "exercise [its] judgment about the permissible inferences that can be drawn from temporal proximity in the context of particular cases." *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009). This is because this court has not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action. *Compare Richardson v. New York State Dep't of Corr. Serv.*, 180 F.3d 426, 446-47 (2d Cir. 1999) (abusive acts within one month of receipt of deposition notices may be retaliation for initiation of lawsuit more than one year earlier); *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 769 (2d Cir. 1998) (discharge less than two months after plaintiff filed a sexual harassment complaint with management and ten days after filing complaint with state human rights

office provided *prima facie* evidence of a causal connection between protected activity and retaliation); *and Grant v. Bethlehem Steel Corp.*, 622 F.2d 43, 45-46 (2d Cir. 1980) (eight-month gap between EEOC complaint and retaliatory action suggested a causal relationship). *with Hollander v. American Cyanamid Co.*, 895 F.2d 80, 85-86 (2d Cir. 1990) (passage of three months too long to suggest a causal relationship between complaint and failure to provide good recommendation). Essentially, a plaintiff can demonstrate a causal connection by (a) indirectly by showing that the protected activity was followed closely by discriminatory treatment; (b) indirectly through other evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (c) directly through evidence of retaliatory animus. *Carr v. WestLB Admin., Inc.*, 171 F. Supp. 2d 302, 309 (S.D.N.Y. 2001) (*citing DeCintio v. Westchester County Med. Ctr.*, 821 F.2d 111, 115 (2d Cir. 1987). Here, Plaintiff can demonstrate all three.

As stated above, Plaintiff received nothing but Satisfactory ratings for his entire career with Defendant DOE, including from Defendant Fanning. Suddenly, however, upon Plaintiff taking leave under the FMLA, Fanning and his administration began to openly harass Plaintiff. *See* Compl. at ¶ 18. Given that Plaintiff's use of FLMA leave occurred throughout the 2013-2014 school year, the retaliatory animus of Fanning and his administration also occurred throughout that same year, continued to occur the following year, and culminated in § 3020-a proceedings after Defendants had attempted to establish a pattern of negative behavior for Plaintiff, all the while inadvertently establishing their own. *See generally id.* at ¶¶ 18, 40-42. Moreover, this treatment was not directed at any other teacher at the School, and Plaintiff had pled that Fanning's discriminating and retaliatory treatment of him was distinct as compared to his fellow employees. *Id.* at ¶ 26. Finally, the retaliatory animus of Fanning was so concerted that at the culmination of his effort to remove Plaintiff from his tenured position and career, Fanning could

not resist but to continue to display his disrespect, and he hummed Christmas carols during his testimony. *Id.* at ¶ 49.

Based on the foregoing, Plaintiff respectfully submits that he has not only pled, but has also presented sufficient evidence to satisfy the pleadings standards as his claims relate to the FMLA. Accordingly, Defendants' instant motion as it relates to the FMLA must be dismissed.

## III. Plaintiff Has Established Viable Claims Under 42 U.S.C. § 1983

### A. Plaintiff Has Pled Viable Claims of Retaliation in Violation of the First Amendment of the U.S. Constitution and the New York State Constitution

In order to prevail on a claim for First Amendment retaliation, a plaintiff must show that (1) the plaintiff engaged in an activity protected by the First Amendment; (2) an adverse action was taken against the plaintiff; and (3) there is a causal connection between the speech and the adverse action. *See Morrison v. Johnson*, 429 F.3d 48, 51 (2d Cir. 2005); *see also Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons*, 842 F.2d 590, 593 (2d Cir. 1988); *Collins v. N.Y. City Transit Auth.*, 305 F.3d 113, 118 (2d Cir. 2002). Claims brought under Article 1, Section 8 of the New York State Constitution are analyzed under the same framework given above. *See Carter v. Incorporated Vill. of Ocean Beach*, 693 F. Supp. 2d 203, 212 (E.D.N.Y 2010) (*aff'd* 415 F. App'x 290 (2d Cir. 2011). Moreover, the Supreme Court has set forth a two-step inquiry into whether a public employee's speech is entitled to protection:

> The first requires determining whether the employee spoke as a citizen on a matter of public concern. If the answer is no, the employee has no First Amendment cause of action based on his or her employer's reaction to the speech. If the answer is yes, then the possibility of a First Amendment claim arises. The question becomes whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public.

*Garcetti v. Ceballs,* 547 U. S. 410, 418, (2006), *cert. denied,* 562 U.S. 995 (2010). In describing the first step in this inquiry, *Garcetti* distinguished between employee speech and citizen

speech. Whereas speech as a citizen may trigger protection, the Court held that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Id.* at 421.

As concerns the first prong outlined above, issues of public concern are clearly within the gambit of First Amendment protections. *See Dun & Bradstreet, Inc.v. Greenmoss Builders, Inc.*, 472 U. S. 749, 758–759 (1985). Speech deals with matters of public concern when it can "be fairly considered as relating to any matter of political, social, or other concern to the community." *Snyder v. Phelps*, 131 S. Ct. 1207, 1216 (2011). In the present case, the most critical aspect of public concern that Plaintiff addressed to Fanning's administration involved the safety at a public school through the reduction of security personnel at the School. *See* Compl. at ¶¶ 27, 32. Clearly, the safety within a public school is well within the gambit of a public concern. Moreover, Plaintiff's speech cannot be simply disregarded as having occurred pursuant to his official duties. Plaintiff is a special education teacher – and although Defendants place as "beyond dispute" the protection of his "own students and preventing inappropriate behavior in his own classroom" – Plaintiff was never vested with the responsible for the safety of the entire School. Nor was Plaintiff responsible for policing students that were not his own, yet he did so regardless and was seriously injured in breaking up a fight. *Id.* at ¶¶ 29-31. Rather, Plaintiff's speech was voiced as a member of the School's community. Plaintiff spoke as a citizen and member of the community of the School, and he was actually born and raised one and a half blocks away from the school where the events giving rise to this lawsuit occurred. *See* Gabor Decl. at Ex. A, 3020-a Transcript, at 727:7-15.

As concerns the second prong of the above analysis, Plaintiff has already established, both in the pleadings and the foregoing argument, that he was subjected to adverse employment actions beginning in October 2013 and continuing up to and including the filing of his Complaint.

As concerns the third prong, there exists a definite causal connection between the frivolous and negative evaluations Plaintiff received and his speech. Not only did Plaintiff begin speaking out on the safety issues of the school at the beginning of the 2013-2014 school year, he continued to do so after he was injured while breaking up a fight in November 2013. *Id.* at ¶ 29-30. Further, one of the members of Fanning's administration who Plaintiff voiced his concerns to was none other that the Assistant Principal in charge of security for the School, Assistant Principal Pekow, who is not only a hand-selected crony of Fanning, but who was also involved in the issuance of the frivolous and negative evaluations of Plaintiff and the subsequent Education Law § 3020-a proceedings.

Accordingly, it is respectfully submitted that Plaintiff has proffered sufficient facts to allege a claim for relief through the violation of his right to free speech under the First Amendment of the U.S. Constitution pursuant to 42 U.S.C. § 1983 and Article 1, Section 8 of the New York State Constitution. As such, Defendant motion to dismiss as it relates to these two causes of action must be dismissed.

## B. Plaintiff Has Pled a Viable Claim for the Violation of his Equal Protection Rights[3]

The Equal Protection Clause of the Fourteenth Amendment is "essentially a direction that all persons similarly situated be treated alike." *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985). To state a claim for an equal protection

---

[3] Plaintiff does not bring as a cause of action a violation of due process rights. Any such belief by Defendants is due to an unintentional scrivener's error, and as such, Plaintiff respectfully withdraws any such claim perceived to be brought under a violation of said rights.

based upon selective enforcement of the law, a plaintiff must plead that: "(1) they were 'treated differently from other similarly situated' individuals and (2) this 'differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 790 (2d Cir. 2007); *Mattison v. Black Point Beach Club Ass'n*, 376 Fed. Appx. 92, 93-94 (2d Cir. 2010) (summary order). In determining whether individuals are "similarly situated, "[t]he test is whether a prudent person, looking objectively at the incidents, would think them roughly equivalent.... In other words, apples should be compared to apples." *Cassidy v. Scoppetta*, 365 F. Supp.2d 283, 290 (E.D.N.Y. 2005) (*citing Penlyn Development Corp. v. Incorporated Village of Lloyd Harbor*, 51 F. Supp. 2d 255, 264 (E.D.N.Y. 1999)).

In the present case, Plaintiff has pled that following his taking leave under the FMLA and speaking to Fanning's administration in the safety of the School, he became the target of harassment, retaliation and subjected to a hostile work environment. *See* Compl. at ¶ 40. Plaintiff also pled that the treatment he received from Fanning's administration was unique to the other faculty and staff at the School. *Id.* at ¶¶ 25, 26. This differing treatment not only encompassed verbal harassment, but also the frivolous disciplinary and negative evaluations that the Fanning administration leveled solely at Plaintiff. By way of example, Plaintiff has offered supporting material that at least one charge used in the § 3020-a proceeding – quickly leaving his classroom to retrieve supplies for his students – was selectively used to punish Plaintiff, whereas Defendants themselves took no disciplinary action on the individual responsible for ensuring that a teacher was scheduled to a required two-teacher classroom for a six (6) month time period. *See Id.* at ¶41; *see also See* Gabor Decl. at Ex. A, 3020-a Transcript, at 363:22-365:10; *see also*

15

Gabor Decl. at Ex. C, Opinion and Award, at pp. 10-11. Moreover, Plaintiff was charged with the failure to complete IEP plans. However, he was not the only teacher to turn in IEP plans late, but was the only teacher charged with not meeting the deadline. *See* Opinion and Award at p. 11.

It is respectfully submitted that Plaintiff was treated differently and subjected to the selective enforcement of Defendants' policies because of the statutorily protected FMLA leave, his speaking out on matters of public concern, and his protected status as an older educator. Therefore, Defendants' instant motion must be dismissed as it concerns Plaintiff's claims brought under the violation of Plaintiff's right to Equal Protection pursuant to 42 U.S.C. § 1983.

## C. Plaintiff Has Sufficiently Pled Municipal Liability Against Defendants Under 42 U.S.C § 1983 through *Monell*

To prevail under § 1983, the evidence must also show an official policy or custom that causes the plaintiff to be subjected to a denial of a constitutional right. *Augustin v. Enlarged City Sch. Dist. of Newburgh,* 616 F.Supp.2d 422 (S.D.N.Y. 2009). Notably, "to show a policy, custom, or practice, the plaintiff need not identify an express rule or regulation." *Patterson v. County of Oneida,* 375 F.3d 206, 225 (2d Cir. 2004). Moreover, "actions taken by persons whose activities represent official policy may constitute a custom or policy for § 1983 purposes." *Tekula v. Bayport-Blue Point Sch. Dist.,* 295 F.Supp.2d 224, 233 (E.D.N.Y. 2003). "[W]here liability is sought against a municipality based upon the actions of one of its officers or employees, the plaintiff must demonstrate that his or her injury arose from the acts of the officer or employee in the course of executing a municipal policy or custom" *Weimer v. City of Johnstown,* 249 A.D.2d 608, 609, 670 N.Y.S.2d 624 (3rd Dept., 1998) (*citing Oklahoma City v. Tuttle,* 471 U.S. 808, 810, 105 S. Ct. 2427, 85 L.Ed.2d 791 (1985)).

The Second Circuit Court of Appeals has thus summarized the criteria for determining whether municipal policy is implicated by an employee's actions as follows: "liability under *Monell* may be premised on any of three theories: (1) [the] employee was acting pursuant to an expressly adopted official policy; (2) [the] employee was acting pursuant to a longstanding practice or custom; or (3) [the] employee was acting as a 'final policymaker.'" *Hurdle v. Bd. of Educ. of the City of N. Y.*, 113 Fed. Appx. 423, 424-425 (2nd Cir., 2004) (*citing Lytle v. Carl*, 382 F.3d 978, 982 (9th Cir., 2004) and *Pembaur v. City of Cincinnati*, 475 U.S. 469, 497, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986)). With respect to a claim that an employee is a "final policymaker," Plaintiff "need not establish that the employee is 'a municipal policymaker for all purposes. Rather, with respect to the conduct challenged, he must be responsible under state law for making policy in that area of the municipality's business ... or must have the power to make official policy on a particular issue . . . or final authority to establish municipal policy with respect to the action ordered.'" *Hurdle*, 113 Fed.Appx. at 425 (2d Cir. 2004) (*quoting Jeffes v. Barnes*, 208 F.3d 49, 57 (2d Cir. 2000)); *see also Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989); *Pembaur v. City of Cincinatti*, 475 U.S. 469, 481 (1986). Ultimately, "the court must 'ask whether the government official is a final policymaker for the local government in a particular area, or on the particular issue' involved in the action." *Id.* (*quoting McMillian v. Monroe Cnty., Ala.*, 520 U.S. 781, 785, 117 S. Ct. 1734, 138 L.Ed.2d 1 (1997)).

In the present case, Plaintiff has sufficiently pled that Defendant Fanning, through his individual actions and those of his administration, acted as the "final policymaker" within the School. Under certain circumstances, "a public school principal may be a final policymaker where the 'harm that befell the plaintiff was under the principal's control.'" *Eldridge v. Rochester*

*City Sch. Dist.*, 968 F. Supp. 2d 546, 562 (W.D.N.Y. 2013) (*quoting Zambrano-Lamhaouhi v. N.Y.C. Bd. of Educ.*, 866 F. Supp. 2d 147, 175 (E.D.N.Y. 2011)); *Marino v. Chester Union Free Sch. Dist.*, 859 F. Supp. 2d 566, 569 (S.D.N.Y. 2012) ("However, while broad rulemaking authority is vested in the school board by law, policymaking authority may not be so strictly limited. As a practical matter, principals are the highest ranking officials in the school and thus have policymaking authority in the day-to-day operations of the school."); *T.Z. v. City of New York*, 635 F. Supp. 2d 152, 179 n.27 (E.D.N.Y. 2009), *rev'd in part on other grounds*, 634 F. Supp. 2d 263 (E.D.N.Y. 2009) ("A school principal has final policymaking authority in the management of the school and her conduct represents official district policy within the purview of the school."); *Rabideau v. Beekmantown Cent. Sch. Dist.*, 89 F. Supp. 2d 263, 268 (N.D.N.Y. 2000) (explaining that the New York "legislature did not intend to impose upon the board of education a duty to make and assume direct responsibility of enforcing rules reaching down into each classroom in the school system," that the principal "was the highest ranking person in the school . . . directly responsible for discipline," and, therefore, the principal's "knowledge of her subordinate's behavior and acquiescence, if not direct participation, in the conduct amounts to a custom or policy attributable to the [d]istrict").

Because Plaintiff has stated throughout his Complaint that the hostile, discriminatory, and retaliatory treatment he was subjected to came under Defendant Fanning and his administration, it is respectfully submitted that Plaintiff had sufficiently alleged the liability of Defendants under 42 U.S.C. § 1983 through *Monell*.

## IV. Plaintiff Has Established Viable Claims Under the NYSHRL and NYCHRL

### A. Plaintiff Has Pled a Viable Claim of Age Discrimination

Age discrimination claims brought under the NYSHRL are analyzed under the same *McDonnell Douglass* framework addressed above. *See e.g. Spiegel v. Schulmann*, 604 F.3d 72, 80 (2d Cir. 2010) (applying *McDonnell Douglas* to employment discrimination claims under the NYSHRL); *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 498 n.1 (2d Cir. 2009) ("Age discrimination claims brought pursuant to the NYSHRL . . .are analyzed under the ADEA framework, . . . just as gender discrimination claims brought pursuant to the NYSHRL . . . are analyzed under the Title VII framework."). Therefore, a plaintiff must demonstrate that demonstrate: "(1) that she was within the protected age group, (2) that she was qualified for the position, (3) that she experienced adverse employment action, and (4) that such action occurred under circumstances giving rise to an inference of discrimination." *Szewczyk v. City of N.Y.*, 2016 US Dist LEXIS 91856, at *22 (E.D.N.Y. July 14, 2016, No. 15-CV-918 (MKB)).

Until recently, the right to recover under the NYCHRL was treated as congruent with the standard for similar claims under state and federal law. *See, e.g., Ferraro v. Kellwood Co.*, 440 F.3d 96, 99 (2d Cir. 2006) ("The standards for liability under these [state and city] laws are the same as those under the equivalent federal antidiscrimination laws."). In 2005, the New York City Council passed the Local Civil Rights Restoration Act of 2005, N.Y.C. Local Law No. 85 (2005), amending the NYCHRL to "abolish parallelism between the [NYCHRL] and federal and state anti-discrimination law." *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 278 (2d Cir. 2009). "Moreover, "[t]o state a claim for discrimination under the NYCHRL, a plaintiff must only show differential treatment of any degree based on a discriminatory motive." *Gorokhovsky v. N.Y.C. Hous. Auth.*, 552 F. App'x 100, 102 (2d Cir. 2014). "Nonetheless, as the NYCHRL and

federal [claims] address the same type of discrimination, are textually similar, and employ the same standards of recovery, New York courts . . . resolve federal, state, and city employment discrimination claims consistently with *McDonnell Douglas Corp.*" *Hanna v. New York Hotel Trades Council*, 18 Misc. 3d 436, 851 N.Y.S.2d 818, 822 (N.Y. Cnty. Sup. Ct. 2007).

In the present case, it cannot be disputed that Plaintiff, a sixty-four (64) year old man, is within the protected age group. *See* Compl. at ¶ 7. Similarly, it cannot be disputed that he was in any way not qualified for the position he held, and Defendants have made no attempt to do so. And, as established above, Plaintiff did experience adverse employment actions, and has pled as such. Further, Plaintiff has stated in his Complaint allegations that give rise to an inference of discrimination, as he was told by his coworkers, all of whom are approximately thirty (30) years his junior, that they had not received similar treatment by Fanning or his administration. *See id.* at ¶ 25-26.

Therefore, Plaintiff respectfully submits that he has established a viable claim of discrimination based upon his age under the NYSHRL and NYCHRL, and Defendants' instant motion must be dismissed as it related to these claims.

## B. Plaintiff Has Pled a Viable Claim for Retaliation Under the NYSHRL and NYCHRL

"To make out a *prima facie* case of retaliation, a plaintiff must demonstrate that '(1) [he] engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action.'" *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 14 (2d Cir. 2013) (*per curiam*) (quoting *Lore v. City of Syracuse*, 670 F.3d 127, 157 (2d Cir. 2012)).

Unlike retaliation claims under the NYSHRL, the retaliation complained of under the NYCHRL "need not result in an ultimate action with respect to employment . . . or in a materially adverse change in the terms or conditions of employment." Instead, the retaliatory act that the plaintiff complains of must "be reasonably likely to deter a person from engaging in protected activity." *Bermudez v. City of N.Y.*, 783 F Supp. 2d 560, 577 (S.D.N.Y. 2011). For claims of retaliation, the plaintiff must show a "causal link" between the protected activity and the retaliatory act. Id.; *see also Williams v. N.Y. City Housing Auth.*, 335 Fed. Appx. 108, 110, 2009 WL 1774271, at *2 (2d Cir. June 24, 2009).

In the present case, Plaintiff engaged in the protected activity of filing a Notice of Claim against Defendant DOE on or about September 23, 2015. *See* Compl. at ¶ 6. It cannot be readily disputed that Defendant was unaware of this activity. Thereafter, Plaintiff underwent the hearing conducted pursuant to Education Law § 3020-a, a proceeding that is itself an adverse action, and which Defendant Fanning proceeding to put his disregard and animosity of Plaintiff on full display. *See id.* at ¶ 49. Following the dismissal of all of the § 3020-a charges against Plaintiff, Fanning continued to withhold Plaintiff's 2015-2016 performance evaluation which prohibited Plaintiff from transferring out of the School which Fanning heads. Therefore, it is respectfully submitted that a causal connection exists between Plaintiff's filing a Notice of Claim, essentially putting Fanning on notice that his actions could be the subject of a lawsuit, and the continued retaliatory actions that he and his administration directed at Plaintiff. Accordingly, Defendants' instant motion must be dismissed as it pertains to Plaintiff's claims of retaliation brought pursuant to the NYSHRL and NYCHRL.

## C. Plaintiff Has Pled a Claim for a Hostile Work Environment

To establish a hostile work environment claim under New York state law, a plaintiff must show that his workplace was "permeated with discriminatory intimidation, ridicule, and insult, that [was] sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S. Ct. 367,

126 L. Ed. 2d 295 (1993) (quotation marks and citations omitted); *Patterson v. County of Oneida*, 375 F.3d 206, 227 (2d Cir. 2004); *see also Forrest v. Jewish Guild for Blind*, 3 N.Y.3d 295, 305, 310-11, 819 N.E.2d 998, 786 N.Y.S.2d 382, (N.Y. 2004) (applying standard for New York state law claim of hostile work environment). Courts must look at the totality of the circumstances to determine whether an environment is "hostile" or "abusive" and should consider the following nonexclusive list of factors: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's "work performance." *Harris*, 510 U.S. at 23. Moreover, a plaintiff must demonstrate not only that she found the environment offensive, but a reasonable person also would have found the environment to be hostile or abusive. *Id.* at 21-22.

Further, the standard for maintaining a hostile work environment claim is lower under the NYCHRL. "The New York City Human Rights Law was intended to be more protective than the state and federal counterpart." *Farrugia v. N. Shore Univ. Hosp.*, 13 Misc. 3d 740, 820 N.Y.S.2d 718, 724 (N.Y. Sup.Ct. 2006). The NYCHRL imposes liability for harassing conduct that does not qualify as "severe or pervasive," and "questions of 'severity' and 'pervasiveness' are applicable to consideration of the scope of permissible damages, but not to the question of

underlying liability." *Williams v. New York City Hous. Auth.*, 61 A.D.3d 62, 872 N.Y.S.2d 27, 38 (N.Y. App. Div. 2009) (*citing Farrugia*, 820 N.Y.S.2d at 725).

The pervasive hostile and abusive nature of the Fanning administration towards Plaintiff has been discussed at length in this memorandum. The discriminatory and retaliatory acts began suddenly in October of 2013 and continued with regularity throughout the filing of this action. Not only did Plaintiff perceive these acts to be hostile towards himself, but he was even told by a number of his colleagues – all of whom are younger than Plaintiff – that Fanning's treatment of him was unique, and expressed how they had not been subjected to similar treatment. *See* Compl. at ¶ 25-26. The force of the maltreatment of Plaintiff is apparent through the frivolous disciplinary records and negative evaluations that allowed for the unjust and adverse imposition of Education Law § 3020-a charges levied against Plaintiff. *See generally id.* These occasions of not only jeopardized Plaintiff's career, but kept him from pursuing addition avenues of employment. *See id.* at ¶¶ 48, 56-57.

For the forgoing reasons, it is respectfully submitted that Plaintiff has pled viable claims under the NYSHRL and NYCHRL as they relate to a hostile work environment. Therefore, Defendants' motion as it relates to these claims must be dismissed.

## CONCLUSION

For all the forgoing reasons, Plaintiff respectfully requests that Defendants' Motion to Dismiss should be denied in its entirety, and for such other relief as the Court may deem just and proper.

Dated: January 9, 2017
Garden City, New York

Respectfully submitted,

JONATHAN A. TAND & ASSOCIATES, P.C.
*Attorneys for Plaintiff Clifton Bradley*

By:

Hope Senzer Gabor (HG7437)
990 Stewart Avenue, Suite 225
Garden City, New York 11530
T: (516) 393-9151
F: (516) 467-7528
E: hgabor@jtandlaw.com

24