# Exhibit C

# OPINION AND AWARD

In the Matter of Arbitration between:

---

DEPARTMENT OF EDUCATION OF THE CITY OF NEW YORK,

    Complainant-Employer,

v.

Clifton Bradley,

    Respondent-Tenured Employee,

Pursuant to Education Law Section 3020-a.

**SED File No. 27,546**

---

Before: Marc A. Winters, Hearing Officer

## APPEARANCES:

For the Department of Education

Angel Cox, Esquire, Of Counsel
Office of Legal Services

For the Respondent

Steven Anthony Morelli, Esquire

## HEARING DATES:

A Pre-Hearing Conference was held on November 9, 2015, before this Hearing Officer, Marc A. Winters, at 100 Gold Street, New York, New York. At the Pre-Hearing Conference, the Respondent, was represented by Steven A. Morelli, Esquire. The Department of Education was represented by Angel Cox, Esquire, of Counsel, Office of Legal Services.

The DOE provided for discovery and inspection of the documents that were available, per the Respondent's request, prior to, after and during the evidentiary hearings.

Evidentiary Hearings were held, before this Hearing Officer, Marc A. Winters, on November 9, 2015; December 1, 2, 14, 15 & 16, 2015, at 100 Gold Street, New York, New York.

Oral closings were given on December 16, 2015.

## INTRODUCTION

The New York City Department of Education brings this action, pursuant to Education Law §3020-a, against CLIFTON BRADLEY for his failures in the nature of incompetent and inefficient service, neglect of duty, insubordination, misconduct, and unwillingness and/or inability to follow procedures and carry out normal duties, during the 2013-2014 and 2014-2015 school years. CLIFTON BRADLEY, under file #0782654, is a tenured teacher, most-recently assigned to A. Philip Randolph Campus High School, located in District 6, New York County.

## SPECIFICATIONS

1. During the 2013-2014 and 2014-2015 academic years, Respondent failed to properly, adequately, and/or effectively plan and/or execute lessons, as observed on each of the following dates:

    a) October 9, 2013;
    b) November 25, 2013; c) March 14, 2014;
    d) April 3, 2014;
    e) October 2, 2014;
    f) October 30, 2014;
    g) May 4, 2015; and
    h) May 8, 2015.

2. On or about October 8, 2014, Respondent neglected his duties, and/or failed to follow school policy and procedure, and/or used poor judgment, and/or demonstrated a Jack of professionalism, in that he abandoned his classroom teaching assignment without permission from his supervisor.

3. On or about October 8, 2014, Respondent neglected his duties, and/or failed to follow school policy and procedure, and/or used poor judgment, and/or demonstrated a Jack of professionalism, in that he deprived students of the instructional program mandated in their Individualized Education Plans (IEPs).

4. On or about January 30, 2015, Respondent neglected his duties, and/or failed to follow school policy and procedure, and/or used poor judgment, and/or demonstrated a Jack of professionalism, in that he failed to complete students' Individualized Education Plans (IEPs) as directed.

5. On or about May 8, 2015, Respondent neglected his duties, and/or failed to follow school policy and procedure, and/or used poor judgment, and/or demonstrated a Jack of professionalism, in that he abandoned his classroom teaching assignment without permission from his supervisor.

6. On or about May 8, 2015, Respondent neglected his duties, and/or failed to follow school policy and procedure, and/or used poor judgment, and/or demonstrated a Jack of professionalism, in that he deprived students of the instructional program mandated in their Individualized Education Plans (IEPs).

3

7. During the 2013-2014 and 2014-2015 school years, the Respondent failed to implement directives, recommendations, counsel, instruction, and/or professional development from observation conferences, group meetings, and/or one-to-one support with school administrators, support staff and/or other support with regard to:

   (i) Effective classroom instruction and lesson execution;
   (ii) Effective lesson planning;
   (iii) Effective use of questioning and discussion techniques;
   (iv) Effective use of student assessment in instruction;
   (v) Effective use of questioning and discussion techniques;
   (vi) Effective classroom management; and
   (vii) Effective student engagement.

THE FOREGOING CONSTITUTES:

1. Just cause for disciplinary action under Education Law §3020-a;
2. Incompetence and/or inefficient service;
3. Insubordination;
4. Conduct prejudicial to the good order, efficiency or discipline of the service;
5. Conduct unbecoming Respondent's position or conduct prejudicial to the good order, efficiency, or discipline of the service;
6. Substantial cause rendering Respondent unfit to properly perform obligations to the service;
7. Neglect of duty;
8. Misconduct; and
9. Just cause for termination.

The undersigned was appointed Hearing Officer in this matter. The DOE and Respondent were represented by Counsel throughout the proceedings. Both the DOE and Respondent were afforded a full and fair opportunity to present witnesses, to conduct, direct and cross-examination, of each witness, and to present documentary evidence.

All witnesses were sworn. A stenographic record of each Hearing was made. This Hearing Officer has full authority to resolve any arbitral challenges or procedural issues and to decide the case on its merits. Both Advocates, for the DOE and the Respondent, made opening statements, entered numerous exhibits into the record and gave oral closings. Neither party objected to the

4

fairness of this arbitration proceeding. Based on the record produced, this case is now properly before this Hearing Officer and ready for adjudication.

Prior to the start of this Hearing, the Respondent, through Counsel filed a motion to dismiss for lack of subject matter jurisdiction to determine probable cause which has not yet been addressed by this Hearing Officer.

**Respondent's Motion to Dismiss for Lack of Subject Matter Jurisdiction to Determine Probable Cause.**

On November 15, 2015, Respondent's counsel filed the above preliminary Motion to Dismiss for the Respondent.

The motion argues that the charges brought about in this Hearing do not comply with Education Law 3020a.

The main reasons articulated by Counsel, in defense of this motion, are: there was no vote by the employing Board on probable cause and that this Hearing Officer is without jurisdiction to hold a Hearing pursuant to 3020a.

These same arguments have been made at other Hearings before this Hearing Officer as well as numerous times before other Hearing Officers adjudicating Section 3020a cases. Therefore, it is not necessary, for this Hearing Officer, to discuss these arguments in detail, each and every time this motion is made.

The main arguments proffered in this motion have to do with the delegation Authority of the Chancellor and whether this Hearing Officer has jurisdiction over the Section 3020a matter before me.

5

A review of the Education Law with respects to Sections 3020a and 2590h and as determined by the courts, and in particular, *The Supreme Court of the State of New York, County of Rockland, Malcolm Menchin, Petitioner, vs. New York City Department of Education, Performance Conservatory High School, Respondent*, clearly evidences the Chancellor's authority to delegate under 2590h.

Upon further review of the motion and Sections 3020a and 2590h, this Hearing Officer finds that the procedures followed in this instant case complies with the statutory requirement of the Education Law. There is no merit to the motion.

This Hearing Officer believes the procedural arguments, presented, in the Respondent's motion, would be better suited to be addressed, in a different venue or arena, as these Section 3020a hearings are not the proper avenue to continually pursue this same motion.

The Respondent's motion to dismiss is hereby denied.

## SUMMARY OF THE PARTIES POSITIONS:

### DOE:

The Department of Education asserts that they have proven by a preponderance of the evidence that the Respondent has rendered incompetent service and failed to carry out his normal pedagogical duties. The DOE further claims that Respondent failed to do his job, not just in one year but two. The DOE further argues that through witness testimony and the numerous exhibits submitted into evidence, the Department has proven that the Respondent has failed to perform the basic requirements of his job as a teacher.

The DOE requests and argues that termination is the only proper remedy for this case.

## RESPONDENT:

The Respondent is a tenured teacher and dedicated pedagogue with approximately thirteen (13) years of service with the Department of Education. Respondent has no prior 3020a disciplinary record. Respondent, prior to the 2014-2015 school year, has been a teacher, with satisfactory ratings, for twelve years.

Respondent submits that he is fully committed to meeting the needs of his students and that he is not incompetent to fulfill his professional duties for his IEP students.

The Respondent argues that the Department of Education has failed to meet their burden and prove by a preponderance of the evidence that Respondent should be terminated. Respondent argues that the DOE case does not support in any way that he was an incompetent teacher. Respondent asserts that he remains capable of providing his students a valid educational experience. The Respondent asked that the charges be dismissed.

## DISCUSSION AND FINDINGS:

The basic principle in arbitration, when discussing discipline or discharge, is that an Employer must have just cause for imposing such a penalty. The burden of proof falls directly on the Employer. Education Law, Section 3020a cases are no different. The DOE bears the burden of proving their charges by a preponderance of the evidence which would convince a reasonable person of another person's guilt.

The Respondent, in this case, has been charged, incompetent and inefficient service, neglect of duty, insubordination, misconduct, and unwillingness and/or inability to follow procedures and carry out normal duties, during the 2013-2014 and 2014-2015 school years.

The DOE is asking that the Respondent be terminated as Respondent is unable to provide a valid educational experience for the students in his class.

Arbitrators/Hearing Officers normally look for two distinct areas of proof. First, whether guilt has been established. Second, has the proper penalty been handed out? Here, we only have to be concerned with the first proof. Has guilt been established?

This Hearing Officer first must determine if the Respondent's conduct did in fact rise to the level of behavior for which the end result would justify termination. The question becomes. Was the evidence presented at the Hearing, in support of the charges, sufficient to prove the allegations made by the DOE against the Respondent?.

The most important evidence in a case, such as this, comes in the form of testimony from witnesses. The source of such testimony whether it is firsthand knowledge or merely hearsay is an important part for proving just cause. This Hearing Officer relies heavily on the firsthand knowledge of such witnesses since the consequences to the Respondent are so great.

To make a decision in 3020a cases, usually it is necessary to first examine the Specifications and the evidence supporting those charges along with the Respondent's defenses of those charges listed in the DOE's Specifications. A Hearing Officer must determine whether the DOE is accurately portraying the conduct of the Respondent for which the DOE is asking that termination be the end result.

As mentioned above, the DOE must prove their charges by a preponderance of the evidence. Preponderance of the evidence simply put means the evidence has to be sufficient, to create, in this Hearing Officers mind, that the DOE has established its case.

The Respondent, in this case, left private business, after sixteen (16) years, as a computer

8

programmer and project manager to go back into teaching. Respondent attained a Master's degree in Special Education and had a certification for Special Education, grades 4 through 9. Respondent did not have any special certification in math or science, subjects for which he taught, to special education students, for over thirteen (13) years for the DOE.

The question becomes. How does a teacher with twelve (12) years of satisfactory performance become incompetent basically in one (1) school year? What went wrong?

Unfortunately, the Administrators for the Respondent's school were unable to adequately address those types of questions for this Hearing Officer.

At the conclusion of the DOE's case in chief, Counsel for the Respondent made a motion to dismiss all charges based on the DOE's failure to meet their burden on any of the charges levied against the Respondent.

For the reasons set out below, the evidence, in this case, does not support the charges filed by the DOE. Primarily and most importantly due to the testimony, from witnesses for the DOE, the DOE was unable to establish its case.

Termination, in the labor and employment world, has been liken to "industrial capital punishment" for an employee. For so much at stake with the employee's career and livelihood, the principal and assistant principals, in this case, when testifying showed a disingenuous pattern for lack of commitment to and for this 3020a procedure. Their combined testimony was riddled with inconsistencies and lack of concerns for any proofs to support the charges.

Because of those inconsistencies and lack of proof, this Hearing Officer, granted the Respondents motion to dismiss, at that time, five (5) of the seven (7) charges listed in the

9

specifications.

Dismissed at that time were specifications 2, 3, 4, 5, & 6. Specifications 1 and 7 were not dismissed at that time so this Hearing Officer could review the entire record before issuing a decision.

Specifications 2, 3, 5 & 6, were charges that the Respondent abandoned his classroom teaching assignments without permission and thereby deprived his students of instructional programs mandated in the student's Individualized Education Plans (IEP's) on October 8, 2014 and May 8, 2015, respectively.

However, when listening to the testimony and re-reading the transcripts of AP Pekow, there was not one iota of evidence presented to suggest how the Respondent's students were deprived of any instructional programs. Rather insulting was the fact that the AP Pekow testified of having no knowledge of what was listed in any of the Respondent's students IEP's

Additionally, the charges of abandonment were for only minutes while the Respondent took care of obtaining resources and other needs needed for his class because of the lack of such resources in his classroom. Not taken into account by the AP was the fact that Respondent's co-teacher gave her permission for the Respondent to leave and obtain what he needed to do for the class. And as rules exist, they must be communicated. A teacher must be aware of such a rule and the consequences for violating that rule in advance. Here, that was not the case.

AP Pekow went on to testify that Respondent's class cannot be left with any classroom teacher. She further testified that a classroom teacher and a special education teacher must be in the class at all times due to the student's IEP's. When asked on cross-examination if a rule existed

10

to that affect, AP Pekow stated that she thought it was a rule or a law or common knowledge but did not where it was written if written at all. More interesting was the fact that AP Pekow testified that the IEP students cannot be left with just the classroom teacher as a special education teacher, such as the Respondent, needed to be present. However, continuing on cross, AP Pekow testified that for a six month period a regular classroom substitute teacher was assigned a special education class without a special education teacher being present. Her answer as to why, was, "that it happens".

Specification 4 charged the Respondent with his failure to complete IEP plans on time. In his testimony, AP Leonardi failed to state how that was a problem or what rule was actually violated when the Respondent was not the only one to turn in IEP plans late but was the only teacher to be charged with not meeting the deadline. AP Leonardi was more interested in trying to joust with Respondent's counsel and be argumentative although unprovoked by counsel, then testifying to the specification that he charged the Respondent. AP Leonardi's cavalier attitude coupled with his interest to argue with opposing counsel, while unprovoked, shot his chances of this Hearing Officer to weigh his testimony as being anything but less than credible.

Two specifications remain. Specification 1 and Specification 7 as those specifications relate to the Respondent's observations and remedial measures taken by the Administration for the Respondent. As all other specifications, listed above, were dismissed. Specification 1 and 7 should have been dismissed as well at that time.

Normally, this Hearing Officer would go through each observation and discuss the value these observations would have in aiding the DOE in portraying the conduct of Respondent to see if the evidence supports the charges or not and whether just cause exist to show that the Respondent

11

unable to provide a valid educational experience for his students.

For this case it is not necessary to discuss each and every observation. The testimony of both Principal Fanning and AP Pekow was riddled with inconsistencies and unresponsive answers to questions while on cross-examination. This is particularly true with Principal Fanning's infatuation on testifying more on how great he is for his school, then corroborating the charges filed against the Respondent. The Principal's arrogant and disrespectful answers and attitude given to Respondent's counsel and his need to hum Christmas songs on the record instead of paying attention to the questioning that was being conducted during the Hearing earned him no credibility with this Hearing Officer.

Both AP Pekow and Principal Fanning failed to take into consideration any of the Respondent's reasons for teaching his students, who all had very different needs as listed in their IEP's, with the methods he employed to help differentiate so each student would have a chance of learning. In some of the ineffective ratings given, the Respondent was using teaching methods which were preapproved by AP Pekow. Yet he was given a bad rating for not using other methods instead.

Another instance Respondent was rated poorly because one of his students had his head down not paying attention. No one bothered to check and see if the student was ill or if his IEP listed whether he was on medications or had other issues that may warrant the student keeping his head down. The observer just assumed it was the Respondent not reacting to a student with his head down. AP Pekow never bothered to ask the student or the Respondent if there was a problem. She just simply gave the Respondent a bad rating. Principal Fanning, in another instance, rated the Respondent poorly because one of his students would not quit eating while in the classroom. The

12

student failed to listen to the Respondent. It just so happens that the student refused to listen to the Principal also but the Respondent received the poor rating.

Two main areas stood out as problem areas for the Respondent.

First, in the area of the Respondent making math errors and not understanding the more complex math classes especially Geometry for which he was assigned to teach. The Respondent, who was not certified in math, although expected to teach math to students with various levels of math abilities had difficulties teaching advanced concepts and geometry. There was absolutely no effort by the Administration to help the Respondent improve on his advanced math proficiencies other than generalized professional development tailored for all math teachers. There was a definite disconnect when it came to the Administration giving this Respondent assistance in the areas he needed it.

Interesting was the fact that neither Principal Fanning nor AP Pekow had any knowledge of whether the Respondent was certified in math or knew what areas he was capable of teaching and what areas he was not when rating him.

Likewise, neither Administrator knew whether the Respondent attended the various professional development sessions or not and did not follow up to see if those sessions actually helped the Respondent.

Second, in many observations, were the criticisms about the Respondent's lesson plans. However, on cross-examination, AP Pekow testified that there was no real problem with Respondent's formal lesson plans just how he executed his lesson. The concern dealt mainly with the Respondent's failure to differentiate his lesson for the various needs of his students. Principal

13

Fanning had a problem with only one lesson plan taken from the Internet by the Respondent. However, when the Respondent sent a rebuttal to Principal Fanning, after receiving a bad rating to justify the lesson plan pulled from the internet, Principal Fanning did not take the rebuttal into account.

The Respondent was teaching, high school special education student who, as stated on their IEPs, had various math levels from first grade on up.

The problem, once again, was the Administrators, that rated the Respondent, who had no special education training or certifications, had no knowledge of what levels of math Respondent's students were capable of doing. No one bothered to review the IEP's of the students or even ask the Respondent, about his student's levels, prior to performing their observations.

The uncontested testimony was that the Respondent's students were all progressing. Their grades were good. They were all passing the Regents and other end of the year exams. Particularly interesting was the fact that the Respondent did not ever have a complaint from a parent over how their child or children were learning in the Respondent's class.

Another issue, this Hearing Officer had with the observations was the fact that in the 2014-2015 school year, Respondent had two observations in October, 2014 and then not another till he had two in May of 2015. There was no follow up or checking on Respondent, to see how he was doing, by the Administration, as testified by AP Pekow, in the months between to see if the Respondent was progressing or regressing in the areas listed as not effective on the observations.

The very issue of the Respondent's lesson plans were really not addressed until the Principal did an observation on May 4, 2015 and told the Respondent that beginning May 8th to

14

submit his weekly lesson plans to AP Pekow. May 8th only four days after the May 4th observation, AP Pekow held a new observation. Thereafter, the Respondent was terminated. In that short timeframe in May, this Hearing Officer can't imagine, in terms of the Respondent's lesson plans, the Administration was trying to support the Respondent's development.

No real efforts were made by the Administration towards correcting the problem areas that the Respondent had and needed and wanted help for. There was no real remediation. There was no mentoring. There was no one to one help as normally given by Administration trying to help a teacher with areas they need help in.

The evidence in this case does not support the charges, filed by the DOE, in Specification 1, 2, 3, 4, 5, 6, and 7. After weighing the evidence presented by the parties and accessing the credibility of the witnesses, this Hearing Officers finds the Respondent not guilty of the conduct charged in Specifications 1, 2, 3, 4, 5, 6, and 7. The DOE has not proven the Respondent unable to provide a valid educational experience for the students assigned to his class. For a Principal and his Assistant Principals to take such a lackadaisical approach while testifying to terminate a tenured teacher from his position, as they did in this case, is just unconscionable.

If any observations needed to be conducted, it should have been on the performances of AP Pekow, AP Leonardi and Principal Fanning.

### AWARD:

Based on the reasoning and discussion above and the entire record before me, This Hearing Officer finds the Respondent not guilty of the conduct charged in the above Specifications. The

15

evidence presented at the Hearings, in support of the charges, were not sufficient to prove conduct for which the end result would justify termination or any discipline for that matter.

Based on the evidence presented, the weight associated and the credibility of the witnesses, the charges in Specifications 1, 2, 3, 4, 5, 6, and 7, are hereby dismissed.

In accordance with Section 3020a, the Respondent shall be restored to his former position, without loss of pay, if any, and the above charges shall be expunged from his employment records.

It is hereby so ordered this 5th Day of February, 2016.

*Marc A. Winters*

Marc A. Winters, Hearing Officer
Seven Fields, Pennsylvania


**AFFIRMATION**

Pursuant to CPLR 7507:

I, Marc A. Winters, do hereby affirm, upon my oath as a Hearing Officer, that I am the person, described herein, who executed this document which is my Opinion and Award.

Dated: February 5, 2016

*Marc A. Winters*

Marc A. Winters