UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ X

CLIFTON BRADLEY,

                            Plaintiff,                                    16 CIV 07043(RA)

-against -                                                        AMENDED
                                                                                   COMPLAINT

THE NEW YORK CITY DEPARTMENT OF,                        JURY TRIAL
EDUCATION and DAVID FANNING Individually and        DEMANDED
1and in his Official Capacity,

                            Defendants
------------------------------------------------------------------------X

        Plaintiff, CLIFTON BRADLEY, by and through his attorneys, Stewart Lee Karlin Law Group, PC respectfully alleges, upon knowledge as to himself and his own actions, and upon information and belief as to all other matters, as follows:

## PRELIMINARY STATEMENT

        1.      Plaintiff Clifton Bradley is a 64-year-old African-American male. After a successful twenty- three (23) year corporate career, Mr. Bradley began a new career as an educator. Since this transition eleven (11) years ago, Mr. Bradley has served as a math special education teacher at A. Philip Randolph Campus High School (hereinafter referred to as the "School"), part of Defendant New York City Department of Education.

        2.      In the first ten (10) years of his career with Defendant, Mr. Bradley was appropriately rated "satisfactory" by his various supervisors. However, following the hiring of David Fanning as the new principal of the School, Plaintiff became the target of unwarranted and unjustified accusations following Mr. Bradley undertaking activities protected by law and directed at the safety and welfare of others, including his own elderly mother and students.

3. Indeed, the blatant discrimination of Mr. Bradley culminated in termination proceedings being levied against him. Astoundingly, the callous disregard David Fanning felt towards Mr. Bradley's career as an educator went so far that the principal felt compelled to hum Christmas carols while testifying during Mr. Bradley's 3020-a termination proceedings.

## JURISDICTION AND VENUE

4. This is an action pursuant to 29 U.S.C. Section 701, et seq. and the Rehabilitation Act 29 U.S.C.S. Section 794 to vindicate the civil rights of plaintiff. Plaintiff contends that defendants altered the terms, conditions, and privileges of his municipal employment because he advocated on behalf of disabled, special education students. In addition, this is a civil action seeking equitable relief, compensatory and punitive damages, costs, and attorneys' fees, brought forth pursuant to the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq.; the New York City Human Rights Law ("NYCHRL and all other appropriate rules, regulations, statutes and ordinances.

5. This Court has original jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §§ 1331 and 1343.

6. The unlawful practices alleged herein were committed within the State of New York, County of New York. Accordingly, this action properly lies in the United States District Court for the Southern District of New York, pursuant to 28 U.S.C. § 1391.

7. On or about September 18, 2015, Plaintiff's served a Notice of Claim upon Defendant New York City Department of Education which was given claim number 2015PI26960 on September 23, 2015. Accordingly, the present action is timely filed within one year and ninety days of the subject occurrence. This Court has supplement jurisdiction of the state law claims pursuant to 28 U.S.C. § 1367.

8. At all relevant times, the NYCDOE has overseen the NYC system of public schools located throughout all five (5) boroughs of the City of New York and been and continues to be a recipient of substantial federal funds, and as such, is subject to the mandates under the Rehabilitation Act of 1973, 29 U.S.C. § 794, et seq., (the "Rehabilitation Act"), and Section 503 of the Americans with Disabilities Act, 42 U.S.C. § 12203 (the "ADA"), which prohibits retaliation against individuals, such as plaintiff herein, for his opposition to defendant's discriminatory acts against disabled special education students (or "SE students") and for his advocacy on behalf of disabled SE students.

9. Specifically, Section 504 of the Rehabilitation Act, or 29 U.S.C.A. § 794(d), expressly incorporates the anti-retaliation provision of Section 503 of the Americans with Disabilities Act, 42 U.S.C. § 12203, et seq., which prohibits defendants from retaliating against "any individual" because he or she opposes any act or practice made unlawful by the act. See, 42U.S.C.A. § 12203.

## PARTIES

10. Plaintiff, CLIFTON BRADLEY (hereinafter referred to as "Plaintiff"), is a sixty-six (64) year old African-American male and a resident and domiciliary of New York County. At all relevant times herein, Plaintiff was an "employee" of Defendant NEW YORK CITY DEPARTMENT OF EDUCATION as defined by all relevant statutes.

11. Defendant NEW YORK CITY DEPARTMENT OF EDUCATION (hereinafter referred to as the "DOE") is a municipal corporation incorporated under the laws of the State of New York, which is in charge of all public schools in the City of New York. Its headquarters are located at 52 Chambers Street, New York, NY 10007. At all relevant times herein, the DOE was Plaintiff's "employer" as that term is defined by all relevant statutes.

12. Defendant DAVID FANNING (hereinafter referred to as "Fanning"), at all relevant times herein, was and still is the Principal of the A. Phillip Randolph Campus High School (hereinafter referred to as the "School"). At all relevant times herein, Fanning was Plaintiff's direct supervisor. Accordingly, Fanning was Plaintiff's "employer" as that term is defined by all relevant statutes. As set forth below, the individually named Defendant endorsed and directly participated in the discriminatory and retaliatory conduct against the Plaintiff.

## FACTUAL ALLEGATIONS

### 1. Plaintiff' Exercise of the Family and Medical Leave Act

13. Plaintiff commenced his employment as a special education teacher in 2003 at the A. Philip Randolph Campus High School (hereinafter referred to as the "School"), part of Defendant DOE.

14. Over the course of his career with the DOE, Plaintiff routinely proved himself a dedicated, capable, and loyal employee. Indeed, for the first ten (I0) years of Plaintiff's career with the DOE, he was rated "Satisfactory" by his various supervisors.

15. The 2012-2013 school year brought with it a new principal to the School, Defendant Fanning.

16. During the 2013-2014 school year, Plaintiff was forced to request time off during Fanning's early tenure with the School to take care of his elderly and ill mother. By way of example, Plaintiff was required to escort his mother to emergency medical appointments or to respond to several emergency calls when she fell.

17. Plaintiff initially duly applied for FMLA in June 2012. In August 2013, Plaintiff inquired again about intermittent FMLA and the Principal was place notice by a HR email dated August 21, 2013 of this request. On October 23. 2013, Plaintiff's FMLA application was resubmitted and approved in November 2013.

18. A day or two after the occasions Plaintiff would return from caring for his ill mother, Fanning called Plaintiff into meetings.

19. At these meetings, Fanning and/or members of his administration would harass Plaintiff for his statutorily protected absences from the School.

20. Plaintiff's mother passed away in May 2014.

21. As such, Plaintiff's exercise of his statutorily protected ability to care for his elderly mother thereafter placed him within Fanning's cross hairs.

22. Further, as discussed in more detail below, Fanning and his administration began to retaliate against Plaintiff due in part to his care for his mother.

   **2.**   **Plaintiff's Age Claim**

23. Following Plaintiff taking statutorily protected time away from the School, Fanning also began to subject Plaintiff to disparate treatment based upon his age.

24. By way of example, Fanning was continuously rude, disrespectful and exhibited humiliating conduct by shouting at Plaintiff, at times in front of his peers.

25. Plaintiff was subjected to biased observations and evaluations which led to the 3020-a hearing being commenced against him as set forth below.

26. Upon information and belief, Fanning does not treat Plaintiff's younger coworkers in a similar manner.

27. Indeed, Plaintiff's coworkers, all of whom are approximately thirty (30) years younger than Plaintiff, have told Plaintiff that Fanning's treatment of Plaintiff is unique to the faculty and staff of the School, and that none of them personally have been disrespected in a similar manner.

### 3. Plaintiff's 504 Claim

28. Plaintiff also spoke out (advocated on the special education students' behalf) regarding the welfare of the special education population at the School.

29. Specifically, following the arrival of Fanning, Plaintiff observed the removal of the Special Education Department as well as the removal of computers and other equipment purchases through a grant directed for the benefit of the special education population of the School. The Principal was using the money specifically granted for special education students for general education purposes which violates state and federal law.

30. In the summer 2014, Plaintiff raised concerns with the School administration that the removal of this equipment would be detrimental to the educational growth of these students, but the administration refused to correct the situation or otherwise discuss the matter with Plaintiff.

31. In the Fall 2014, Plaintiff also spoke out about the administration's failure to provide duly qualified licensed special education teachers for the School's special education.

32. Specifically, in December 2014 Plaintiff complained to Assistant Principal Rhonda Pekow (hereinafter "Pekow") about the administration's failure to provide a full-time math teacher for special education students in a 15:1 ratio setting.[1]

33. Fanning and the School's administration refused to act in response to Plaintiff's complaints.

---

[1] A certified special education teacher must be assigned to provide specially designed instruction to a special class. In addition, special education teachers who teach special classes must be highly qualified in the subjects they teach. Special education teachers who teach special classes must be certified/licensed in special education and highly qualified in each core academic subject that they teach. 8 NYCRR § 200.6(b). In addition, the No Child Left Behind Act of 2001 28 U.S. C § 7801(23). also requires Special education instruction shall be provided by individuals appropriately certified or licensed.

34. As a direct result of Mr. Bradley's advocacy for special educations students and his complaints regarding the lack of support and resources for special needs students, he was retaliated against as set forth below.

## RETALIATION

35. Plaintiff 's personnel file has been papered with baseless and defamatory observations, letters to the file, negative observations and evaluations as set forth below.

36. Fanning and his administration escalated the targeting of Plaintiff for harassment and retaliation, subjecting Plaintiff to a hostile work environment, in response to Plaintiff having advocated for special needs students and exercising his lawful actions under the Family and Medical Leave Act.

37. Indeed, Fanning, on several occasions, screamed at and berated Plaintiff for leaving his classroom to gather supplies for students and to make photocopies for a student test.

38. At each instance when Plaintiff left the classroom to do these activities, another teacher would remain in the room to monitor the students.

39. At the beginning of the 2013-2014 school year, all DOE schools were required to adopt DOE's new teacher evaluation system which used the "Danielson" framework, which measures 22 teaching components, each on a four-point scale as follows: 4 -highly effective; 3 -effective; 2- developing; and 1 -ineffective.

40. Throughout these negative observations which are subjective, Fanning and Pekow used the "Danielson" framework as the pretextual vehicle to portray Plaintiff negatively. (Note: A qualified Assistant Principal of Special Education should have conducted the observation). Under testimony, Mr. Fanning stated that he was a Professor Of Special Education at New York City College). In fact, and in testimony, David Fanning (along with

Asst. Math Principal Ms. Pekow, Asst. Prinicpal of Operations, Ms. Garcia, and Asst. Principal of Student Personnel, and Mr. Leonardi have no: Undergraduate, Graduate or Post Graduate educational classes in Special Education. Note: this fact is in the 3020a testimony.

41. Further, Fanning and his administration, specifically Pekow (hereinafter referred to as "Pekow"), retaliated against Plaintiff by using the largely subjective evaluation system to have Plaintiff terminated for incompetency.

42. These biased, subjective and retaliatory observations dated October 9, 2013; November 25, 2013; March 14, 2014; April 3, 2014; October 2, 2014; October 30, 2014; May 4, 2015; and May 8, 2015 were used to seek Plaintiff's removal.

43. Plaintiff was called for a disciplinary meeting concerning attendance on November 15, 2013, May 3, 2014 concerning time and attendance, March 2, 2015 concerning IEPs, March 6, 2015 concerning leaving class, May 8, 2015, concerning a "U" rating when an examination was given, and October 10, 2015 concerning leaving a class.

44. On or about June 22, 2015, Defendants' retaliatory conduct against Plaintiff culminated in the imposition of charges pursuant to New York Education Law §3020-a. There was a total of seven specifications asserted by the DOE against Plaintiff. The §3020a charges were brought for incompetency, and failing to exercise professional judgment and neglecting his duties by abandoning his class and not timely completing IEPs. As a result, Plaintiff had a full and complete administrative trial.

45. It should be noted that the overwhelming percentage of cases brought against teachers for incompetency and neglecting one's duties leads to a tenured teacher's removal through termination or a forced resignation.

46. The §3020-a specifications against Plaintiff used these biased and retaliatory observations and letters to the file as the basis for the 3020-a proceeding.

47. Due to the commencement of the 3020-a proceeding, Plaintiff was suspended with pay effective June 24, 2015.

48. However, because of having the 3020-a proceeding commenced against Plaintiff, he was no longer eligible for per session work and thus lost additional salary which he would have earned as a night school algebra teacher and class substitute teacher.

49. The shocking disregard with which Fanning held for Plaintiff, his career as an educator and the legal process was on full display during the §3020-a hearing. Indeed, Fanning proceeding to hum Christmas carols during his testimony.

50. Despite the concerted effort of Fanning and his administration to retaliate against Plaintiff by seeking his termination through a §3020-a proceeding, on February 5, 2016, Hearing Officer Marc A. Winters dismissed all seven-specifications levied against Plaintiffs and restored Plaintiff to his former position, and expunged the charges from Plaintiff's record.

51. Commencing a 3020-a proceeding against Mr. Bradley had a profound impact both psychologically and professionally.

52. Defendants have continued to harass Plaintiff during and following the §3020-a decision.

53. Assistant Principal of Math, Ms. Pekow ordered a fellow Math Teacher to not attend an IEP which was legally mandated by N.Y.S. Pekow did this to sabotage Plaintiff. As a result, the completion of the IEP was delayed.

54. Moreover, despite multiple attempts made by Plaintiff to obtain his 2015-2016 Annual Performance Review on June 20, 2016, June 29, 2016, and July 6, 2016, and similar attempts made by his Union Chapter Leader, Myra Cruz, on July 4, 2016 and July 6, 2016, Defendants withheld the 2015-2016 annual performance review from Plaintiff.

55. Upon information received from Fanning, Plaintiff is the only educator at the School who had not received their rating under the 2015-2016 Annual Performance Review.

56. Further, as an enrollee of the DOE Online Open Market Transfer System, Plaintiff can apply and transfer to other schools from April to August.

57. Although Plaintiff had been approached to interview for a position that required an interview for positions in a high school, he was unable to immediately interview for the position or be hired by that school at that time because his 2015-2016 Annual Performance Review was withheld.

58. Plaintiff did not receive his 2015-2016 Annual Performance Review until July 7, 2016, which is signed by Fanning and dated June 26, 2016 after every other younger coworker similarly situated to Plaintiff (A circumstance admitted to by Fanning.) and co-workers who did not advocate for special needs students and who had not asked for FMLA leave had already received their review.

59. In October 2015, Plaintiff requested to email and dissiminate the rule that a Special Education teacher cannot leave a class to attend to professional activities, to the A.P. Randolph new in-coming teachers and Teaching Staff (approximately 104) was denied. Mr. Fanning, along with all 4 other Assistant Principals received Bradley's request. Mr. Fanning ignored the request to inform the school staff.

60. During the 3020A proceedings: Mr. Fanning ordered that Bradley could only be on the 1st floor or the 6th floor – Not in the area of students, as if he were a child molester, or abusive to children. When Mr. Bradley asked Mr. Fanning to either document the "order" or rescind it, Mr. Fanning refused.

61. Mr. Bradley requested from Ms. Garcia (keys for the Science Lab and Science teacher's lounge) when he was assigned to teach Science: Living Environment. Maintaining

and distributing class keys is part of the Assistant Principal of Operations responsibilities. Ms. Garcia made excuse after excuse and never gave him the keys.

62. Mr. Bradley, was denied per-session for 1 year which was financially detrimental to him.

63. During the 3020A legal proceedings (First Week of Sept. 2015). Mr. Bradley was ordered to contact parents of students who were chronically absent, as he could not teach per 3020A rules. Mr. Bradley was assigned the copy machine room (directly next to the time clock where all teachers clock in and could see Mr. Bradley at a desk making phone call daily in the morning and afternoon). Prior to this time, all teachers under a 3020a Legal proceedings were assigned a room to perform telephone calls to the parent. The noise generated by the industry sized copy machine was deafening and unhealthy. Due to the phone not working, Mr. Bradley was later assigned a public space (where teachers and students alike) could view him making telephone calls and not a room.

64. Mr. Bradley is the most senior member in the Special Education department. of 7 teachers. Mr. Bradley's request to keep his Sept. 2016 program (Living Environment and Humanities Instructor for the Sept. 2017 school year) was denied.

**FIRST CLAIM FOR RELIEF- VIOLATION OF THE FMLA-RETALIATION**

65. Plaintiff repeats and re-alleges each and every preceding paragraph as if fully set forth at length herein.

66. By reason of the foregoing, Defendants have unlawfully retaliated and been denied equal terms, conditions and privileges of employment, in that Defendants have created a hostile work environment, subjected Plaintiff to an atmosphere of adverse acts, and treated him disparately against Plaintiff for his statutorily protected exercise of leave in order to care

for his elderly and ill mother in violation of the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq.

67. As a direct result of the Defendants' violation of the Family and Medical Leave Act, as alleged herein above, Plaintiff has suffered damages, which are set forth more fully below.

### SECOND CLAIM FOR RELIEF-504 RETALIATION CLAIM

68. Plaintiff repeats and re-alleges each and every preceding paragraph as if fully set forth at length herein.

69. As a direct result of Plaintiff complaining about the principal's neglecting to enforce laws pertaining to special education and disabled students and advocating on their behalf, Plaintiff was retaliated against by Defendants by being denied equal terms, conditions and privileges of employment, in that Defendants have created a hostile work environment, subjected Plaintiff to an atmosphere of adverse acts, and treated him disparately by papering Plaintiff's personnel file with baseless, biased and retaliatory observations, letters to the file, a negative evaluation, and commenced a baseless 3020a proceeding against Plaintiff.

70. The defendants, the New York City Department of Education violated the Rehabilitation Act, 29 U.S.C. Section 504, et seq. by retaliating against plaintiff because he advocated on behalf of disabled, Special Education students.

71. As a direct result of the Defendants' violation of 504, as alleged herein above, Plaintiff has suffered damages, which are set forth more fully below.

### THIRD CLAIM FOR RELIEF-NYCHRL-AGE-BOTH DEFENDANTS

72. Plaintiff repeats and re-alleges each and every preceding paragraph as if fully set forth at length herein.

73. This Court has supplemental jurisdiction and pursuant to New York City Administrative Code § 8-502 authorizes a civil law suit.

74. By reason of the foregoing, defendant violated New York City Administrative Code § 8-107 by subjecting plaintiff to different terms, conditions and privileges of employment based on age.

75. By reason of the foregoing, the Defendants have unlawfully discriminated and retaliated against Plaintiff as concerns his terns, conditions and privileges of employment, in that Defendant has created a hostile work environment, subjected Plaintiff to an atmosphere of adverse acts, and treated him disparately from his similarly situated younger coworkers.

76. As a direct result of the Defendants' violation of Plaintiff's rights pursuant to the NYCHRL, as alleged herein above, Plaintiff has suffered damages, which are set forth more fully below.

### PLAINTIFF DEMANDS A TRIAL BY JURY

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests a judgment against Defendant as follows:

a. A declaration from the Court that Defendant DOE commenced a 3020-a proceeding and otherwise subjected him to disparate treatment and a hostile work environment due to his advocacy for special needs children and FMLA retaliation;

b. Expungement of the NYC DOE "Problem Code" from his file, that his fingerprints will not be flagged and that he will be eligible for per session work;

c. That his observations, evaluations, and letters to the file be expunged and the Defendant be ordered to change his observations and evaluations to "effective"/satisfactory;

d. Back pay;

e. Compensatory damages for pain and suffering;

f. Liquidated damages;

g. Punitive damages against the individual only

h. Damages to reputation;

i. Attorney fees and costs;

j. Any other relief as this Court may deem just and proper under the circumstances.

Dated: New York, New York
January 9, 2018

Respectfully submitted,

STEWART LEE KARLIN
LAW GROUP PC


s/ Stewart Lee Karlin
STEWART LEE KARLIN,
Attorneys for Plaintiff
111 John Street, 22nd Floor
New York, N.Y. 10038
(212) 792-9670